A few minutes late we apologize but not too deeply. Real hair argument in city of Roseville versus Horizon Lines. Mr. Brown. Good morning your honors. John Brown on behalf of the Plaintiff Appellants. I would like to reserve three minutes for rebuttal. Mr. Brown if I could ask you something right out of the starting blocks. What about the Horizon LLC's guilty plea? If we were to allow that into the case by one means or another what would be the significance of that? Do you think it shows scienter? The significance of that guilty plea in the documents surrounding that guilty plea would be significant in a number of respects and two primary ones your honor in our view. First it shows that there were high level officers or individuals at the company who were involved with the antitrust conspiracy which thus does give an implication that the company itself had scienter. Now you're talking about Sarah, Gil, and Glow. Correct as well as others and the second aspect. Others unnamed. Pardon me? Others unnamed. Others others unnamed so far by the government although strongly implicated and suggested by the government but others that are named by us in our complaint. Would the government use the word superiors? What did they mean by that? Do they specify what they really meant? The government didn't specify by name what they meant but the only plausible implication from what the government said after this two and a half year investigation is that the superiors were people who were superior to Sarah and the only individuals who were superior to Sarah at the company were Urbana who resigned in incredibly suspicious circumstances. The five people that you've named? Correct. But we really don't know who. I mean this you have to make a particularized showing. I mean this is this is very very clear and and even after as you're saying two and a half year investigation we still don't know which let's assume somebody of those five but we don't know who. I agree with that your honor. We have to make a showing. We don't have to prove it now. What we have to do now is raise a strong inference at the pleading stage from all the facts. That it could be one of them? No I mean I think yet or two of them. That's not our primary contention your honor. I think our primary contention is we've identified by name sufficiently four of them that it that it is and that would be Urbana, Keenan, Raymond. Part of part of the allegations in our complaint is that superiors must refer to one of these individuals. But when you look at the other allegations in their certainly four of those individuals. How about the corporation? I'm getting back to yes Horizon. Does that plea show Scienter? Yes your honor. In our view that that plea does show Scienter because they played guilty to a criminal conspiracy that mirrors exactly the allegations in our complaint. To violate the antitrust laws. Pardon me? To violate the antitrust. Correct but by by their very nature this conspiracy was so statements made by the company and by its most senior officers materially false and misleading over two and a half years. I want to get to those statements. I want to ask a question here which I think is a is it could be an important one because I think it's a very important case for this for this case. You contend that the individual defendants who pled guilty Sarah Gill and Glover were the top officers responsible for Puerto Rico including pricing, marketing, sales, etc. and that the other defendants the other five who have not pled guilty made false statements directly about these topics so that the guilty defendants therefore must have supplied the false information that was distributed to the public. Are you familiar with the Supreme Court's decision of June 13th? Janus Capital Group versus First Derivative Traders? Yes I am. What is the effect in your view that that has on this case? Let me answer that briefly. Because I was I will say candidly I was surprised there has been no 28 J letter addressed to the Janus decision. Well I'm not surprised your honor because the Janus decision really has no applicability here and I'm going to talk about that at one second but just one quick point of clarification it's not our contention that it was only the guilty plea defendants who had responsibility for pricing. Our complaint alleges very specifically that pricing was done out of Charlotte where the non-guilty plea defendants operated and indeed the company admitted that in its SEC filing so that's a point of clarification. But Janus says Janus says for purposes of 10b-5 the maker of the statement is the person or entity with ultimate authority over the statement including its content and whether or how to communicate it. If the Puerto Rican if Puerto Rico defendants as your friends call them so as you pretty disparagingly made statements gave information to the other defendants that the defendants then used the Puerto Rico defendants the criminal defendants were not the makers of those statements for purposes of 10b-5. I believe that isn't it's an incorrect I don't know whether your honor is reading it that way but I believe if someone were to read Janus that way it would be incorrect and overbroad because Janus was not discussing the liability that has been set forth in decades of law of principles and agents and the way that corporations act through their agents. Janus was solely discussing the liability of company A distinct legal entity for statements made by company B another distinct liability excuse me a distinct entity and set forth some rules there for when company A can be liability. Janus I submit did not intend to upset the settled law of corporations speak through their agents and and the information that is contained in every SEC filing by every corporation comes necessarily from the corporation's officers and other agents of the corporation and if that information is false it simply cannot be and Janus was not contemplating this. Well the court rejected the government's proposed definition that would permit private plaintiffs to sue a person who provides the false or misleading information that another person then puts in the statement. Rejected that argument. It rejected that argument again in the context of separate legal entities which I do think is important here but also your honor it never said that when a company acts through its agents when the company is the company's agent supplies the false information that doesn't mean I can't sue the agent and I can't sue the company. It can't be that that's what Janus means. If a company officer knowingly supplies false information certainly with knowledge that it's going to be reflected in an SEC statement even if he doesn't actually make that SEC statement there has to be liability there to the securities laws and Janus wasn't contemplating the situation. I've gotten you off your argument. I don't think I ever got on it. So let me go I have my this is a lot of build up for my opening line now. It's gonna fall it's gonna fall very flat but you know the district court in this case as your honors obviously understand and know found that five high-ranking officers of horizon repeatedly made numerous false statements over two and a half year period while three other officers at a minimum were engaging in a massive criminal antitrust massive and admitted criminal antitrust price-fixing conspiracy under their nose nonetheless the district court which also said investors were damaged when the truth was revealed dismissed the case at the pleading stage as to every defendant without giving us a chance to even take discovery on core issues like whether Sarah is responsible for some of these statements that we think the the inference from the face of the pleadings is that he is whether when Raymond Keenan and Taylor traveled to that they were discussing with Gilbert Sarah the pricing rates for that line whether Sarah provided information to them or whether they discussed the conspiracy which I think is a very plausible inference especially in light of the government's recent statements and the unexplained I it's a bit of bloodbath at the senior management level of this company guilty plea I just I just does this mean you pretty much established the elements at least at this stage to keep horizon LLC in if you've got say enter and I believe the district court made findings that they had made misleading statements about things were rosy and the you know business was picking up and so forth are you maintaining our am I putting words in your mouth you're not putting words in my mouth you're putting words in my mouth but there are words that I myself would say with the following caveat certainly in this case for this reason maybe not in every case where a company pleads guilty to something any trust violations for a corrupt practice something but certainly in this case because for three reasons there's no dispute that the conspiracy rendered the company's statements materially false no dispute on this appeal there's no dispute that the conspiracy was carried out by very very high-level officers of the company and there is no dispute that those officers including Sarah no dispute is carried out by high-level officers of the company only if you include in that or are you saying the five Sarah the guilty defendants a criminal defendants I yes that's who I mean but I thought they were you're calling them the top level I'm not playing cute at all I'm saying the things that are truly not in dispute it rendered the statements false high-level officers by the way spoke there's a debate in this case as to whether Sarah's statements were materially false or not I think they were or whether other statements wasn't wasn't the pre-sentence report with respect to saying that there were superiors involved and wasn't a superior of Gil Sarah and not necessarily anyone else of the five others that you've named well I think I think with respect to one particular statement in the pre-sentence report it can be read that way your honor potentially but there are other statements as well and there were statements where the government said Sarah was in the middle level of the conspiracy and even in the statement that you're talking about the government went on to say including currently but was Sarah a quote senior executive close quote he was but he was charged at that point of time so it had to be Sarah plus someone else and we know that because when they were sentencing Sarah they said it was Sarah plus someone else as well and now they've reached this guilty plea with the company and carved out the CEO from a non-prosecution agreement the COO from a non-prosecution agreement and the CFO already is subject to liability to Santa require an intent to deceive manipulator defraud do you really have that from just this guilty plea your honor again we have it in the circumstances here where the the person who committed the criminal act also repeatedly spoke with Sarah Sarah's who I mean repeatedly spoke to investors and was a super high-level member of this company's management team who indisputably knew that false statements were coming out of the at a minimum we're coming out of his uh his you suggest the non-criminal defense the five other defendants should have done to to shield themselves from liability or for a 10b5 they should have discovered the conspiracy and told by means of a press release that there was a price-fixing conspiracy out there that's what you kind of suggest not in your brief not really well not really but that's what I that's I'm picking that up is one what you're really saying they should have done I think what I'm saying is what they did was they either discovered the conspiracy or they were incredibly reckless and not doing so they spoke repeatedly I'm talking about the non-guilty plea defendants now repeatedly about pricing and rates and other things that supposedly differentiated this company from the competitors when there was this massive conspiracy going on they had an obligation when they by nature is covert well it's it's by nature covert until it's revealed and then we find out that the tentacles of it were with every corner of this company and people keep falling like but they're supposed to know something that is secret or you say they're supposed to go out and discover something even though they don't know it but but there were no particularized facts to suggest that that any individual defendant had reason to believe that the rates for example were the product of an illegal kids of a conspiracy speaking to the nine guilty plea defendants your honor I disagree with that I think the complaint contains a number of particularized facts that when viewed together raise that strong influence I enter again at the pleading stage and and and and for instance one of the things that I think is very compelling is investors were sort of bewildered at times during the class period about how the company horizon kept raising its rates in the super competitive environment and they time and time again asked these gentlemen how is this happening and these gentlemen said we've gone to Puerto Rico we've spoken to our customers this is why it's happening and they gave legitimate reasons which were false they had a duty to investigate those reasons if they were going to answer those questions and give legitimate reasons they were at least reckless two things they were either reckless in not really investigating and finding out the real reason why this was happening which would have been easy to do as I'll explain in a minute or second they spoke to Sarah he gave them false information and they and they recklessly republish it which would make maybe not them liable but the company certainly isn't that Janice it's not because well because the company has to be liable for those statements if you're gonna read Janice as overruling even Southland when it doesn't even discuss these situations if you're gonna read Janice is overruling Bridgestone in the Sixth Circuit which says that the center of any individual is sufficient enough whether they made a false statement or not or whether they spoke to the markets or not if you're gonna read Janice is over reading Dynex in the Second Circuit it's gonna be a massive it's gonna be the first interpretation of Janice maybe and it's gonna be a very sweeping one but I have one more specific fact that I think is important and gets lost a little bit I'm afraid in the briefing this was not a particularly difficult price fixing conspiracy to uncover I don't believe from inside the company because while the defendants characterized it as a parallel pricing conspiracy and the district court adopted that it wasn't proper for the district court to do that because that's not what we allege in their complaint and that's not what the price fixing conspiracy which means that in Puerto Rico one company would come to come to Verizon and say please ship my goods to Jacksonville Florida and because that caught customer may have been allocated to a competitor they would say sure we'll do it for a billion dollars and they say well no I'm not gonna do that because the other people over here are gonna do it for a reasonable rate so when these officers were down in Puerto Rico discussing with their customers as they said they were like what about these rates how do you see rates in the market the customers would say well you know your rate is pretty good you know for some for some things other people's rates are kind of crazy it would have found it's only plausible to assume they would have found information that's inconsistent with the legitimate reasons that they repeatedly gave during during conference calls and I think if you take all of that together together with the DOJ together with these unexplained and frankly inexplicable resignations where people are leaving four million dollars on the table and disappearing to this day without warning it does raise a collective Santa no your honor we are definitely not we have the names of individuals who are responsible at this company I'm not standing here and saying to you although I think you could but I'm not saying to sustain this complaint we have to you have to hold that we don't know who knew this information at the company but we're gonna sustain the claiming this company anyway that's lack of science in its truest form and that's not what we really need here now there's one other area that I want to address the course attention to and I previewed it a little bit but the criminal defendants spoke to the market and in particular defendant Sarah in a Journal of Commerce article in 2006 and this was an article commissioned by the company horizon in a journal that's horizon and that that article was divided into sections and each section was clearly the responsibility of a particular horizon executive the one that's it Sarah was responsible for at his picture it talked about Puerto Rico and it quoted only Sarah no one else the district court found in the defendants don't dispute that there was false information in that article but they say well you could there's no reason to believe that it came from Sarah I there is more than that there is every reason to give us discovery at this stage to attempt to prove that that information either came from Sarah or at a minimum was reviewed and approved by well the district court had other reasons for rejecting and one of them was puffery and you know a lot well no actually your honor some of the quoted statements by Sarah the district court rejected as puffery but the other statements it didn't because you couldn't attribute them correct to Sarah yes and I said and I submit that's not really a plausible inference at the pleading stage this isn't a strong inferences the enter standard this is whether we've played facts that on their face make it you know reasonable to assume that Sarah had some responsibility for reviewing supplying the information or reading and approving the article that had his picture next to it we will get back to you can I just ask one question with respect to Janice in tell us to judge Posner noted that yes it needs to be someone but that someone needs not to be explicitly noted in the essentially said that an individual does not have to be expressly noted as well do you perceive Janice as interfering with those statements until abs and dynamics absolutely not within the corporate form I think Janice if you read it even expressly recognize a few times that there can be implied attribution of a statement it doesn't have to be expressed and I don't think that Janice address you have said what Janice doesn't do and what it did not affect what did it do what what did it do well my honest opinion on it is it's the next step from Stonehenge which was a case that was argued upon the Supreme Court which was the next step from Central Bank and these cases all deal with a concern that other companies distinct legal entities are going to get swept up in securities fraud because they're doing business with fraud written companies and I think Central Bank said there was no aiding and assault cable set-top boxes under a certain agreement to some other company they couldn't be sued because that other company was committing fraud and now Janice has said when there are two distinct legal entities even though they might be talking occasionally about the same thing if one entity is the one committing the fraud you can't sweep the other entity into it but what Janice did not say so that's where I think Janice is it's a step further down that road of not bringing outside entities into the orbit of a legitimate security fraud against a fraud ring company it did not suggest that agents of the company or officers of the company suddenly are not responsible for their actions all right we'll get you back on rebuttal thank you thank you mr. Lockwood good morning and may it please the court let me start with the query about the guilt you could you just put the mic up just a touch and also note your name for the record sorry it's Paul out of Staten Arbs yeah I'm representing Horizon Lines Inc and Horizon Lines LLC and I'm arguing today on behalf of all of the defendants who are part of the appeal how about that guilty plea your honor if we allowed it in the case right and and we didn't oppose the request to put the guilty plea in the case and the reason why is it doesn't change anything and the reason why it doesn't change anything is that what the company has admitted to in the guilty plea is that it engaged in a conspiracy to improperly restrain trade it's an antitrust yes that its employees entered into agreements with its competitors to to fix prices and that was already established that's already something that was pleaded earlier in the case and we didn't dispute the particularity of that pleading because you had three employees who had pleaded guilty they were in prison the fact that the company would later plead guilty was it was something that that I think you could view as an inevitable given the respondee at superior rules of antitrust law but when it shows say enter on the behalf of the company couldn't that along with misstatements by the company at least render the company liable under this action no it couldn't because you would be borrowing the antitrust respondee at superior principles into the securities laws and what what's required but you got it you got an add-on there you've got an add-on saying that there were superiors in addition to them that were involved and nobody's contesting that that was not the case I realize it's not a deposition and I assume if we ever get past the motion to dismiss would it be likely that Sarah Glova or Glova or Gil would be deposed well the the issue is we are here they haven't had discovery yet and they've complained about the absence of discovery but they can go to Congress on that I mean they're this the the statute was set up at this point but this the statute I mean clearly under is it true see if I have the law right that when you look at whether they're scientor that you have to look at all the facts alleged taken collectively whether they give a strong inference of scientor is that trick is that correct yes and in the same case that sets that standard to tell us case and also yeah tell us tell us tell us the Supreme Court decision and tell us but also via yes yes and this was a lot of business I mean this is like one third of the business of the company wasn't it this it is approximately one third of the vision but what that kind suggests that Raymond and Keenan those other people were at least reckless if they didn't know about this especially about the time that they're putting out an IPO and they want to make sure that everything's in order to make the IPO go recklessness under under a via under Advanta Alfama each of the cases in this circuit it requires facts that are so obvious that you must have known so it's not it's not a negligence or even a gross negligence standard the standard for recklessness is that you know hair below and tattoo of no and not should have correct correct must have known so can I just I hate I'm sorry if I keep being this to death I'm sure we'll give you extra time but you're saying I mean I was struck with the fact that the the liability principles with regard to securities fraud I've always dealt with individuals and what they knew and I'm a little confused by the fact that we have a corporation here that is I hate you're saying you can't really tack that on the securities law is that because it deals with individuals and their knowledge and what they said or it's because there's different elements for the company to the facts the company would have to admit to be guilty of securities fraud was it would have to admit that statements were made to the investment public with with knowledge within intent yeah but you don't get a conspiracy I mean it requires an intentional act enter into it I realized the corporation can only act through officers or employees but don't you have an intent to do what though it was an intent to violate the antitrust laws intent to violate the antitrust turn around and issue statements that the district court has found willfully false about you know everything is rosy and so forth and the person said enough to render the corporation liable could you have such a thing in in securities litigation I don't know I well I would say that you can because the people who are speaking for the company did not you had you had someone within the organization who had the knowledge you had someone else within the organization who is who is responsible for authorizing the antitrust I mean authorizing the SEC filings and speaking to investors who didn't have the knowledge and and under that's always been the thrust of the securities litigation I agree I'm just confused by what this could mean and I don't know I but it's a I don't think it's unique to this case you have situations with some frequency where there's problems I mean corporations are huge organizations they've got numbers of people in the world who might be engaged in wrongdoing that we would be faced with a with a standard that any wrongdoing that anyone does on behalf of a company because under principles of responding it's superior someone some employee doesn't act the company's now guilty to any wrongful act anywhere would be a securities violation because because the company would then know and even though the people speaking for the company have done everything right they would they would subject the company to securities violations for opening their mouths and I think the standard that has been set by it by every court except for the Sixth Circuit is a much more reasonable standard let me let me also ask if I may and we may end up coming back to this isn't it also that that in order to establish a strong inference it requires a comparative analysis of competing inferences is that correct that's one element of it has to be at least as strong as any competing inference and it has to be a cogent so I mean at this point under the PSLRA you know as Judge Posner said Intel Labs it really takes us away from the old notice pleading that we had before and that we were schooled in and brought up with it creates a higher level but if you're going to have that comparative analysis of competing inferences doesn't the district court have to look at those competing inferences and deal with them in the opinion I believe the district court did other than possibly parallel pricing I couldn't find any basically what the court did was it looked at each individual inference that was suggested by the plaintiffs and it said I don't buy that I don't buy that I don't buy that and then when it was supposed to take them collectively on pages 42 and 43 one single page it dealt with taking collectively and really didn't deal with it and I couldn't find anything except the possibility of parallel pricing where it ever said okay what are the competing inferences that might overwhelm or rebut the inferences that the plaintiffs are stating well the parallel pricing is the heart of it because I think as the questions here to me this morning has indicated is this is a third of their business this goes to their margins but that shouldn't shouldn't they have known but must have that's a double-edged sword because in Avaya they were saying that you know one of the key things was the financial integrity of the company and that the there was every incentive to make sure that that company was doing well and in this case you not only had that but you had a plus factor you had an IPO that you want to make this company look as good as it possibly could look you had circumstance you have circumstances here where you're asking for speculation about whatever information would have come up to the senior executives in the IPO you have a aggregate the only allegations that's the attack that the district court took here that a lot of these things claimed were speculative including the the plea agreement with regard to the plea with regard to the three individuals in Puerto Rico but but is that really what is required don't you have to you and your brief dealt with a host of competing inferences and I don't see that being done in the district court opinion but if those if instead of calling him competing inferences one calls them speculative do you have to deal with them as reasonable competing inferences well and I'm here what speculative what the district court did is looked at all the inferences that were proposed by the plaintiffs and found them wanting and you started deal with them collectively don't you and if you deal with them collectively what it what is it's far more reasonable and plausible to believe that in the absence of this information and take the Twombly case because you mentioned this is a heightened standard but let's put this out on notice pleading 12b6 pleading we have Bell Atlantic versus Twombly is factually very similar to the contention that they're making here there you had parallel conduct and on a 12b6 basis the Supreme Court said you cannot infer that there was an antitrust conspiracy relating to those prices but here you know every case is on its own facts here you have a resignation of a key individual Urbana two weeks before the stock options he no severance no parachute you have horizon pleading guilty to antitrust violations you have Raymond and Keenan leaving the same day you have the government allocation allegations in the Sarah and Gil and Glover matters that there were superiors involved you have the nature and scope of a of a conspiracy which is a pretty big operation and it was important to the health of the entity and you certainly have opportunity and plaintiffs of argued motive as well with respect to that oh you put all that together and it looks like there's a lot of smoke here but there there is nothing more than smoke and you do need more than smoke you need a but you but you need a district court opinion to deal with it the collective smoke in more than one page I think there's no question he sets out that he has an obligation to consider it collectively he states that he does consider it collectively I mean the bottom I mean literally you go from the last three lines of page 42 to the last three lines of page 43 it's literally one page that's it and I would also submit that if if this court were to write its opinion differently and consider it collectively because we are here on de novo review that if you look at each of those they're not independent factors I mean all of this really comes down to must here are the chief chief executive officer and chief operating officer of the company must they have been involved because this this is a conspiracy that relates to a significant component of the business well the competing inference I think there's two that the judge considered I mean one thing that judge considered is that it's a secret conspiracy the court below noted that that that that a competing inference that was very plausible was that this was being secretly carried out by people who are what conspiracy isn't covert exactly and therefore if you're going to allege that people are involved in that conspiracy that secret conspiracy you've got to have some particularized facts suggesting their but but but you know in the prior argument I mentioned looking at a case from 10,000 feet if you look at this case from 10,000 feet normally you if you make allegations you are allowed to get some discovery because of the abuses that took place the PSLR I came into being in the mid-nineties and the PSLR I says it's going to be more difficult but it can't is the pendulum you're saying a swung so far with respect to how we interpret the PSLR a that they never get a shot to develop the facts they may lose a summary judgment who knows but shouldn't they at get past the motion to dismiss only if they meet the standard and the standard was established for reason and and tell us not only says that to consider it all together but makes it very clear that omissions and ambiguities count against inferring Sienta so the here that's what the plaintiff's case is based on is omissions and ambiguities they they talk about superiors the deal is not even alleged to be a senior officer in the company with respect to the fact that the company has made a recent management change is that all that surprising the company is now three years after this came out so it's not as if they fired the CEO in the wake of this disclosure I mean the management of the company is in effect imploded but in the maritime industry the captain goes down with the ship does that mean he steered it into the iceberg except the one thing I must just suggest this the allegations that that judge Ambrose raising and that were raised by your adversary have been considered and found wanting by the district court individually and in totality so if they were individually found wanting either because there was speculative or because they were not particularized I'm not sure you even get to the weighing with this plaintiff's burden to show that they go into discovery and surviving a the issue I mean my dear friend judge Ambrose suggests that because there was one page where the word totality was used if that that the judge didn't really do his job we've got like 80 90 pages of considering all the inter you know the the the stock options being exercised or battle leave you know all of that stuff and he found him wanting for one or several reasons and and so we then get to the totality. Wasn't there a confidential witness who claimed that the prices were controlled by the Horizon CEO or equivalent? How do you get around that? There was a confidential witness who said it was it was a Horizon CEO or someone similar. Well that was from Sealand that was somebody from another company. And there was well there was a confidential witness who said that there was documents that person was from Sealand. There was another confidential witness who worked in the fleet administration department in 2001 and 2002 even pre long even predating the conspiracy who said that pricing was set by the CEO or someone similar and and what you know what the district court did is it consistent with tell labs it it discounted that confidential witnesses view because it was vague there was no there was no statement about the what he was saying plus he's not actually even saying the CEO knew he's saying CEO or someone similar which is an odd thing to think about in an organization. How about the Journal of Commerce piece and Sierra given his position and his contributions couldn't couldn't you infer from that or conclude that he authorized that article? The article is actually a very lengthy article. Yeah it's an advertisement. It's an advertisement that goes on for several months attributed to Sarah. Right. The statements that they're pointing to are in proximity to his picture so they say that he must have said that as well. What the district court stated is that information comes right out of the public filings. So I think it's much more reasonable to infer that the information comes out of what was taken from the public filings and put into the advertisement not by Sarah but by by the authors of the agreement. I think there's two responses to this as well that strengthen it from a case law perspective. One is this court's decision in Weiner which says that each defendants role in a statement has to be specified in the pleading and second I think the Janus case really supports the position here because in Janus. Now you're saying what you're supposed to be saying. I'm just wondering if anybody thinks Janus stands for anything and if it doesn't why did they grant Sarah? And you even got a comment from somebody outside the peanut gallery. Okay and then the one last point if I have may have one minute because it's something that was raised in the reply brief and that we haven't had a chance to respond to which is the contention that parallel pricing doesn't explain this because what you had here was was random pricing allocation agreement. First of all the the allegations in the complaint repeatedly say that there was an agreement to fix prices, rid bigging, and allocate customers. So it's not just an allocation agreement but the only description of prices that were wildly increased in response to a customer request is set forth in paragraphs 110 through 112 of the complaint that's at A489 and A490 and that describes C-STARS dealing with one of its customers. It doesn't describe Horizon Lines dealings with its customers. So there's actually no specific or particular allegation about Horizon dealing with any customer in this way. There's certainly no particular or specific allegations of that information being available to the senior executives. What they're alleged to have known was the more aggregate financial data about rates, margins, and revenues. Thank you. Let me ask a procedural question. The three criminal defendants did not join in the motion to dismiss and a violent judge was entered as to all defense except those three under 54B. What is the status of the criminal defendants in this case? They are not parties to the appeal. I know that and they're not they weren't party they didn't move to dismiss. Right the case below is is stayed pending this court's action. Okay so there still is a case below against the three criminal defendants. Yes it's it stayed pending this court's decision on this appeal. Thank you. Thank you. Your Honor, just a few brief points in response if I may. Taking them backwards, while there is a case with against the criminal defendants below, I don't want you to think that's a case that's going to exist if this court's. No, no. The net you know and the last thing counsel said before he stepped down seemed to be disputing that there was an inference that a criminal conspiracy took place here and I think that's an example of how far things have swung under the PSLRA where reasonable inferences really are not credited. There can be no dispute there was a criminal price-fixing conspiracy here. The company has played guilty to it. Did he say that? Maybe I misinterpreted but but my larger point is there are so many powerful and compelling inferences here and I understand the district court disregarded them. I do believe that was that was error and in the Sixth Circuit's most recent case interpreting Tel-Avs and Matrix which by the way held nine-nothing that there was scienter under some very skimpy facts. The Sixth Circuit in this Dana Corp case that came down on May 25th said exactly what Judge Ambrose has been saying. Saying you have to look at these allegations collectively and you can't just go through each allegation and dismiss it for this reason and that reason and then at the end of the day said well there's no smoke here. I think we all agree there is smoke here even when you do that but the Sixth Circuit said you risk losing the forest from the trees is what the Supreme Court instructed in Matrix and that's exactly what is happening here. When I have to stand up here and and and brief the district court and brief the appellate court and say but this particular allegation you could spin it this way and you could spin it that way and maybe the size of the conspiracy isn't enough. I submit that if you read the Avaya opinion which is is very good law that the weight of the inferences here again against just the non-guilty plea defendants is is very strong and and certainly sufficient to get discovered. Wasn't Matrix more the evidence of scienter was more than it is here. The case was more about materiality wasn't it? It had two aspects. Yes I agree the bulk of it was materiality but the second part of it was scienter. What it was? Yeah that's right and then and then really the only other point I want to make before I respond to any questions you may have is not to take the joy out of the panel but I do want to give one more contrary view about Janice. You know whatever Janice does mean and obviously we can quibble about it. I doubt I'll get the last word of what it means but whatever it means it does not mean anything about corporate scienter. It did not speak to it, did not address it and we have alleged corporate scienter here in quite a number of ways. Guilty plea of the company, the guilty plea of senior executives, senior executives who I think are yet to get indicted and there's a reasonable inference of that. You know strange and unusual money-leaving resignations. So whatever Janice means I don't think it impacts that part of our case and that's all I had. Thank you very much. The case is extraordinarily well argued and it's a difficult case and we'll take it under advisement and the court would like the transcript of this argument and submit it to us as soon as that can be done and you can you can find out who pays for it. We would like a supplemental brief within a week no more than 10 pages on the effect of the guilty plea, what it means. Okay. Thank you for putting up with it. Thank you very much counsel.